IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

BRIAN KEATON GEORGE,

    Petitioner,

  v.

JOHN W HAVILAND, Warden,

    Respondent.

                                         /

No. 09-02076 CW

ORDER DENYING
PETITION FOR WRIT
OF HABEAS CORPUS

## INTRODUCTION

Petitioner Brian Keaton George is a state prisoner incarcerated at California State Prison - Solano. On May 12, 2009, represented by counsel, Petitioner filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging convictions and a sentence imposed by the Sonoma County Superior Court. Petitioner argues that he was denied the right to a fair trial in violation of due process because of errors made by the trial court in consolidating charges from two separate incidents into a single trial and in giving the jury two erroneous instructions.[1] On July 2, 2009, in the interests of justice the Court stayed the petition,

---

[1] The parties agree that Petitioner's claim of ineffective assistance of appellate counsel for failure to preserve the consolidation claim on appeal is moot. Accordingly, the Court does not address this claim.

because Petitioner's consolidation claim and ineffective assistance of counsel claim were unexhausted. On November 2, 2009, after exhausting these claims, Petitioner filed a motion to lift the stay and filed an amended petition, in which he alleged the aforementioned three claims. On November 23, 2009, the Court granted Petitioner's motion to lift the stay. On February 11, 2010, Respondent filed an answer, and on March 15, 2010, Petitioner filed a traverse. Having considered all of the papers submitted by the parties, the Court DENIES the petition.

## PROCEDURAL BACKGROUND

On December 29, 2005, the district attorney filed a second amended consolidated information charging Petitioner with eleven counts, based on two separate shootings.

The information alleged the following charges relating to a shooting on January 20, 2005: (1) premeditated attempted murder, with sentencing enhancements for personally discharging a firearm and personally discharging a firearm causing personal injury; (2) assault with a firearm, with enhancements for personally inflicting great bodily injury and personally using a firearm; (3) possession of a firearm by a felon; (4) willful discharge of a firearm from a motor vehicle, with enhancements for personally using a firearm, and personally discharging a firearm and causing great bodily injury; and (5) willful discharge of a firearm, with enhancements for personally using a firearm, personally discharging a firearm, and personally discharging a firearm and causing great bodily injury.

The information alleged the following charges relating to a

2

shooting on March 17, 2005: (6) willful discharge of a firearm from a motor vehicle at a person; (7) willful discharge of a firearm at an inhabited dwelling; (8) willful discharge of a firearm; (9) willful discharge of a firearm in a grossly negligent manner; (10) willful discharge of a firearm at an unoccupied motor vehicle; and (11) possession of a firearm by a felon.

Before trial, over Petitioner's objection, the trial court granted the prosecution's motion to consolidate the charges from the January 20 and March 17 incidents into a single trial.

On January 11, 2006, after the close of evidence, the trial court granted a motion to dismiss Count Seven, willful discharge of a firearm at an inhabited dwelling.  Petitioner requested that the court instruct the jury with California jury instruction (CALJIC) No. 2.21.2, an instruction relating to willfully false witness testimony.  The court denied the request.  Additionally, Petitioner objected to the jury being instructed with California jury instruction (CALCRIM) No. 372, an instruction which allowed the jury to infer awareness of guilt from the defendant's flight from the scene of a crime.  The court gave the jury the flight instruction.

On January 13, 2006, the court declared a mistrial on Count One, attempted murder.  The jury found Petitioner not guilty on Count Six, willful discharge of a firearm from a motor vehicle at a person, and convicted him on the remaining Counts.  The jury found all the enhancements true.  On February 2, 2006, the trial court found that Petitioner had a served a prior prison term.

On May 5, 2006, the trial court sentenced Petitioner to an

3

1 aggregate term of thirty-one years to life in prison.  On November
2 30, 2007, the California court of appeal affirmed the judgment in
3 an unpublished opinion, People v. George, No. A113829 (Cal. App.
4 Nov. 30, 2007); Pet's Ex. C.  On December 19, 2007, the court of
5 appeal denied Petitioner's motion for rehearing, but ordered the
6 opinion modified to clarify the correct legal standard.  On
7 February 13, 2008, the California Supreme Court denied Petitioner's
8 petition for review.

## FACTUAL BACKGROUND

The factual background of Petitioner's conviction is summarized from the court of appeal opinion, unless otherwise stated.

I.  January 20 Incident

On January 20, 2005, Jeremy Phillips, on felony probation for a residential burglary, was sitting on a broken-down car parked in the driveway of a friend's house, drinking beer.  A blue car with Petitioner's brother Ryan George and Duwann Walker as passengers, and an unidentified driver, arrived at the house.  Because Phillips had recently been involved in an accident that damaged Walker's car, he made sure Walker was not upset.  Believing everything to be fine, Phillips went back to sitting on the broken-down car.

Shortly thereafter, Petitioner drove up in a burgundy Mercury Cougar, with an unidentified passenger sitting next to him. Phillips knew Petitioner, though not well, and had seen him driving the Cougar around town.  Petitioner drove to within fifteen to twenty-five feet of Phillips, then lowered his sun-glasses and said, "Who you telling on?"  Petitioner then fired at Phillips with

4

a revolver. Although his view was slightly obstructed, Phillips saw Petitioner clearly and was sure that it was Petitioner who shot him. The bullet entered Phillip's left leg and went into his stomach.

At trial, Phillips testified to the above facts, but he insisted that he was shot in the right leg. Dr. Abdul Harris, who had treated Phillips' injuries, testified that Phillips had been shot in the left leg. The trial court admitted into evidence a photo showing that Phillips was shot in the left leg.

Other persons present at the house at the time of the January 20 shooting testified that they and Phillips had been using drugs and alcohol. Some of them testified to hearing the gun shot, while others did not. None testified that he or she saw Petitioner drive up to the house or saw him shoot Phillips.

Phillips testified that he did not know why Petitioner asked him, "Who you telling on?," before shooting, but that it might be related to an incident in December, 2004 where he had encountered the police. Phillips testified that he had gone to a party in Lake County with Walker, Ryan George, Deandre Grinner and several other friends. He was a passenger in a burgundy Cadillac owned by Walker, which was being driven by a tall Caucasian man named Chad, or possibly Brad.

Phillips testified that there was a confrontation at the party with an unidentified person or persons; no blows were exchanged. While he was riding back from the party in Walker's Cadillac, driven by Chad, another car, which had been following them, rammed the Cadillac from behind. Phillips said he heard two gunshots and

5

a tire blow out, and the Cadillac crashed into a barrier.  Phillips and Chad jumped out of the car and ran.  The police, responding to the scene, found Phillips nearby, but Chad was never found.  After examining the car, the police determined there was no evidence of a collision or a blown out tire.  They did find a bullet hole in the back of the car.  Inside the car was a citation made out to Walker, and a cell phone receipt.  Phillips testified that Petitioner's motive for shooting him on January 20 might have been that Petitioner heard that Phillips had talked to the police when they investigated the December crash in Lake County.

II.   March 17 Incident

On March 17, 2005, the Rogers family, along with approximately fifteen guests, was celebrating the birthday of Harold Rogers, Sr. at their house.  Petitioner drove up in a grey Toyota Camry.  From his car, he spoke with John Rogers, who was standing outside the house, and then fired a shot that struck the Rogerses' Cadillac, which was parked nearby.  The gray Toyota sped off.  The police arrived and investigated.  Petitioner was arrested on March 28, 2005, in San Francisco, while driving a gray Toyota Camry.  A loaded .357 Smith and Wesson revolver was found under the carpet of the passenger-side floorboard.

At trial, Santa Rosa Police Officer Michael Clark testified that he was dispatched to the Rogers residence on March 17, 2005.  Clark spoke to Nancy Rogers, who appeared shaken and told him she heard a gunshot.  Clark testified that John Rogers told Clark that he was standing in front of the house when Petitioner and two or three passengers drove up in the gray Toyota Camry.  John Rogers

6

said that Petitioner asked him who was after Petitioner's brother. When John Rogers turned away, he heard Petitioner say, "This house doesn't mean anything." He heard a gunshot, but did not see who fired it. The car then drove away.

At trial, John Rogers testified that he did not remember if the police had visited his parents' house on March 17, 2005. He initially testified that he never spoke to an officer, but later admitted that an officer had questioned him. However, he maintained that he told the officer he was working underneath his car, which was parked several houses down the block, and did not see anything. He denied making the statements Clark testified that he had made.

Defense investigator Carla Jacobs testified that Harold Rogers, Jr. told her he had spoken to Petitioner several weeks after the incident, and had informed Petitioner that he and his family did not want to testify against him and that they were still friends.

At trial, Harold Rogers, Jr. testified that he learned there was a shooting and that a bullet had entered his Cadillac. He said that he was good friends with Petitioner, and denied having a conversation with Petitioner in which he told Petitioner he and his family had no hard feelings about the shooting.

California Department of Justice criminalist Samantha Evans testified that bullet fragments recovered from the Cadillac's engine compartment by Selamawit Isaac, a guest at the party, were likely fired from the revolver found in the Toyota. She also testified that the bullet recovered from Phillips' body was almost

7

certainly not fired from the revolver found in the Toyota, because it was a .38 caliber bullet and thus did not match the .357 revolver.

## DISCUSSION

### I. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a federal writ of habeas corpus may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claims: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." William v. Taylor, 529 U.S. 362, 412-13 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the [Supreme] Court's decision but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. The only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is in the holdings of the Supreme Court as of the

8

time of the relevant state court decision.  Id. at 412.

If the state court considered only state law, the federal court must ask whether state law, as explained by the state court, is "contrary to" clearly established governing federal law. Lockhart v. Terhune, 250 F.3d 1223, 1230 (9th Cir. 2001).  If the state court, relying on state law, correctly identified the governing federal legal rules, the federal court must ask whether the state court applied them unreasonably to the facts.  Id. at 1232.

If constitutional error is found, habeas relief is warranted only if the error had a "'substantial and injurious effect or influence in determining the jury's verdict.'"  Penry v. Johnson, 532 U.S. 782, 795 (2001) (quoting Brecht v. Abrahamson, 507 U.S. 619, 638 (1993)).

When a state court reaches a decision on the merits, but provides no reasoning to support its conclusion, the habeas court must conduct an independent review of the record to determine whether the state court clearly erred in its application of Supreme Court law.  Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000). This review is not de novo; although the court independently reviews the record, it still defers to the state court's ultimate conclusion.  Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

In determining whether the state court's decision is contrary to, or involved an unreasonable application of, clearly established federal law, a federal court looks to the decision of the highest state court to address the merits of a petitioner's claim in a reasoned decision.  Lajoie v. Thompson, 217 F.3d 663, 669 n.7 (9th

9

1 Cir. 2000).  Here, the highest state court to issue a reasoned
2 opinion is the California court of appeal.
3 II.  Jury Instruction on Willfully False Witnesses
4      Petitioner argues that the trial court's failure to instruct
5 the jury with CALJIC No. 2.12.2, that it could disregard all of the
6 testimony of a witness whose testimony was willfully false,
7 rendered his trial fundamentally unfair in violation of his right
8 to due process under the federal Constitution.
9      CALJIC No. 2.21.2 provides: "A witness, who is willfully false
10 in one material part of his or her testimony, is to be distrusted
11 in others.  You may reject the whole testimony of a witness who
12 willfully has testified falsely as to a material point, unless,
13 from all the evidence, you believe the probability of truth favors
14 his or her testimony in other particulars."  The inference provided
15 in CALJIC No. 2.21.2 is permissive, not mandatory, and "does
16 nothing more than explain to a jury one of the tests they may
17 employ in resolving a credibility dispute."  People v. Blassingill,
18 199 Cal. App. 3d 1413, 1419 (1988).
19      The court of appeal concluded that the trial judge erred under
20 state law in refusing to give the instruction based on the fact
21 that Phillips' testimony about being rammed by a car on the way
22 back from Lake County was contradicted by reports of the officers
23 who investigated the crash, and that his testimony that he was shot
24 in the right leg was contradicted by the medical evidence.  Pet's
25 Ex. C, at 11.  The court reasoned that, although Phillips'
26 testimony might have simply been the product of honest mistakes in
27 memory, the contradictions warranted the instruction.  Id.

10

Although the court held that the trial judge erred in not giving the instruction, it found the error harmless. Pet's Ex. C, at 11. The court noted that the absence of the instruction did not prohibit the jurors from discrediting Phillips' testimony if they so chose. Id. It also relied on the fact that other instructions allowed the jury to discredit Phillips' testimony: the judge instructed the jury with portions of CALCRIM No. 226, an instruction including language that jurors may believe all, some or none of the testimony of a witness, with CalCRIM No. 302, an instruction relating to conflicting evidence, and with CALCRIM No. 315, an instruction regarding the credibility of eyewitness testimony. Id. at 12-13.

Even if a jury instruction is in error under state law it does not create a claim cognizable in federal habeas corpus proceedings. Estelle v. McGuire, 502 U.S. 62, 71-72 (1991). To obtain federal collateral relief for errors in the jury charge, a petitioner must show that the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process. See id. at 72; Cupp v. Naughten, 414 U.S. 141, 147 (1973). The instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. Estelle, 502 U.S. at 72.

Here, the other jury instructions given by the judge made clear that the jury could disregard any portion of a witness's testimony if they found the witness not credible. Accordingly, the judge's state law error did not render Petitioner's trial fundamentally unfair.

11

Furthermore, even if the trial court's state law error had violated Petitioner's constitutional rights, habeas relief would not be warranted because the error did not have a "'substantial and injurious effect or influence in determining the jury's verdict.'" See Penry, 532 U.S. at 795. As explained above, based on instructions the trial court did give, the jury must have been aware that it need not credit any portion of the testimony given by a willfully false witness. Indeed, during the course of the trial two jurors sent notes to the judge expressing skepticism about the reliability of Phillips' testimony; one indicated that he or she was inclined to disbelieve his testimony. See 2 Court Transcript 345-346. In such circumstances, the failure to give the willfully false witness instruction could not have substantially altered the outcome of the trial.

Neither the trial court's failure to give the requested instruction, nor the court of appeal's finding that its failure was harmless error, was contrary to, or an unreasonable application of, clearly established federal law, and habeas relief on this ground is denied.

III. Jury Instruction on Flight

Petitioner argues his due process right to a fair trial was violated when the trial court instructed the jury with CALCRIM No. 372, which explained the relationship between the flight of a defendant and his or her awareness of guilt.

CALCRIM No. 372, as given to the jury, provides: "If the defendant fled or tried to flee immediately after the crime was committed, that conduct may show that he was aware of his guilt.

12

If you conclude that the defendant fled or tried to flee, it is up to you to decide the meaning and importance of that conduct. However, evidence that the defendant fled or tried to flee cannot prove guilt by itself."

Under California law, a flight instruction "is appropriate where there is substantial evidence of flight by the defendant <u>apart from his identification as the perpetrator</u>, from which the jury could reasonably infer a consciousness of guilt." People v. Rhodes, 209 Cal. App. 3d 1471, 1476 (1989) (emphasis in original).

The court of appeal found that the flight instruction was proper in light of John Rogers' out-of-court statements, which were testified to in court by Officer Clark, and admitted into evidence as prior inconsistent statements. Pet's Ex. C, at 19; see 4 Reporter's Transcript (RT) 558-559. On the day of the shooting, John Rogers saw Petitioner drive up to his parents' house in a gray Toyota Camry. 4 RT 558. Petitioner asked him a question and then said that "this home doesn't mean anything," before Rogers turned away. 4 RT 559. He heard a gunshot as he turned away from the vehicle, and turned back to see the car driving away quickly. 4 RT 559. The court of appeal found that this statement provided a basis for the flight instruction because it was not connected to an identification of Petitioner as the perpetrator of the crime. Ex. C, at 19.

Petitioner argues that the evidence showed only that he drove past the Rogers residence at the time of the shooting, not that he fled the scene, and thus did not support the flight instruction. However, John Rogers told Clark that, after Petitioner spoke to

13

him, he heard a shot, but did not see who fired the shot. He then saw the gray Camry "flee eastbound on Mohawk street, away from the residence." 4 RT 559. A reasonable jury could have inferred from this testimony that Petitioner stopped his car, asked a question, made a statement, and fled from the scene of the crime after the shot was fired. The jury could have found this flight probative of the charge that it was Petitioner who fired the shot. Thus, the court of appeal's determination that the flight instruction was appropriate was reasonable. Moreover, as stated previously, even if the instruction had been wrongfully given, an erroneous jury instruction does not itself violate due process unless it was so prejudicial that it infected the entire trial. Estelle v. McGuire, 502 U.S. at 71-72. Here, the flight instruction by itself, even if improperly given, would not have rendered the entire trial so fundamentally unfair as to violate Petitioner's due process rights.

The court of appeal's denial of this claim was not contrary to, or an unreasonable application of, clearly established federal law, and habeas relief on this ground is not warranted.

IV. Consolidation

Petitioner argues that the consolidation of the charges against him arising from the January 20 and March 17 incidents into a single trial deprived him of his due process rights. Petitioner concedes that the state law statutory requirements for joinder were met, but argues that, because of weaknesses in Phillips' testimony that were revealed only at trial, joinder resulted in a fundamentally unfair trial.

Improper joinder does not itself violate the federal

14

Constitution.  United States v. Lane, 474 U.S. 438, 446 n.8 (1986). To rise to the level of a constitutional violation, joinder must result in prejudice so great as to deny a defendant his constitutional right to a fair trial.  Id.  When a case is consolidated, the due process concern is whether the jury was able properly to compartmentalize and consider separately the evidence relating to each incident.  United States v. Sherlock, 962 F.2d 1349, 1360 (9th Cir. 1989).  When a very strong case is consolidated with a very weak case, due process is potentially implicated.  United States v. Lewis, 787 F.2d 1318, 1322 (9th Cir. 1986).  The failure of the jury to convict on all counts is "the best evidence of the jury's ability to compartmentalize the evidence."  Park v. California, 202 F.3d 1146, 1150 (9th Cir. 2000).

    The court of appeal determined that, based on California law, joinder was not improper at the time the cases were consolidated. Pet.'s Ex. C, at 16.  In a footnote, the court noted that "a pretrial ruling that was correct when made can be reversed on appeal only if joinder was so grossly unfair as to deny due process."  Id. at 18, n. 6.  The court found that "appellant does not assert on appeal that joinder denied him due process, and the record does not support such a conclusion."  Id.

    Petitioner argues that he did present the due process claim on appeal, and that the appellate court's statement that "the record does not support such a conclusion" does not constitute a reasoned opinion.  He asserts that this warrants de novo habeas review under Pirtle, 313 F.3d at 1167.  Respondent argues that the opinion was

15

reasoned and deference is warranted.

The court of appeal correctly identified the governing federal law, and made a reasoned determination that Petitioner was not unduly prejudiced by consolidation. Accordingly, the Court will review the court of appeal's determination to determine whether it was an unreasonable application of Supreme Court precedent.

Here, the jury did not convict Petitioner of the attempted murder of Phillips, and found him not guilty of shooting at John Rogers. This constitutes strong evidence that the jury was able to compartmentalize the evidence and that Petitioner's due process rights were not violated.

Petitioner's argument that the jury convicted him on charges relating to the January 20 incident only because of the much stronger evidence relating to the March 17 incident is not convincing. The prosecution's evidence relating to both incidents was dependent on testimony from witnesses who appeared unreliable: Phillips because of errors in his testimony and the Rogers family and their friends because of their contrary statements on and off the witness stand.

The evidence relating to the March 17 incident was made marginally stronger by testimony that the bullet recovered from the Rogerses' Cadillac matched the model of the gun found in the gray Toyota Camry that Petitioner was seen driving on the day of the shooting and later when he was arrested. However, Petitioner was only connected to the March 17 incident through the out-of-court statements made by the Rogers family and their friends; unless the jury believed those statements, the recovered bullet would not have

16

been probative of Petitioner's guilt.  Moreover, at trial, the witnesses to the March 17 incident denied having made the inculpatory out-of-court statements.  In contrast, although Phillips' testimony was inaccurate in part, he did not disavow any inculpatory out-of-court statements.  Thus, the strength of the evidence relating to the two incidents was roughly comparable.

Furthermore, the jury's verdict does not support Petitioner's argument that the evidence relating to the March 17 incident was stronger.  The jury could not reach a verdict on the charge of the attempted murder of Phillips on January 20, but acquitted Petitioner on the charge of shooting at John Rogers on March 17.  If the evidence relating to the March 17 incident was much stronger, presumably the jury would have convicted Petitioner on all the charges relating to that incident.  See Park, 202 F.3d at 1150 (noting that if the evidence pertaining to one incident was stronger than the evidence pertaining to the other, presumably the jury would convict on more charges for the stronger incident and on fewer charges for the weaker incident, not the opposite).

Having reviewed the record, the Court finds that the court of appeal's determination that Petitioner's trial was not rendered fundamentally unfair was not contrary to or an unreasonable application of Supreme Court precedent.  Therefore, this claim for habeas relief is denied.

## CONCLUSION

For the foregoing reasons, the petition for writ of habeas corpus is DENIED.  The Court must rule on appealability.  See Rule 11(a) of the Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254

17

(requiring district court to rule on certificate of appealability in same order that denies petition).  A certificate of appealability should be granted "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Court finds that Petitioner has not made a sufficient showing of the denial of a constitutional right to justify a certificate of appealability.  The Clerk of the Court shall enter judgment, terminate all pending motions, and close the file.

    IT IS SO ORDERED.

Dated: July 30, 2010

_Claudia Wilken_
CLAUDIA WILKEN
United States District Judge